UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

*Electronically Filed*                                      CIVIL ACTION NO. 5:13-CV-00195-DCR

ROSE RILEY, GUARDIAN OF
P.T., a minor

                                                                                      PLAINTIFF

vs.                            **MEMORANDUM OF LAW
                    IN SUPPORT OF MOTION IN LIMINE AS TO
                              EXPERT TESTIMONY**

WILBAR INTERNATIONAL, INC.,
BLUE WORLD POOLS, INC., f/k/a                    DEFENDANTS/THIRD PARTY
POOL DEPOT, INC.                                          PLAINTIFFS

vs.

REBECCA CHILTON, Individually and as
Executrix of THE ESTATE OF HAROLD
WAYNE CHILTON                                          THIRD PARTY DEFENDANT

        The Third Party Defendant, Rebecca Chilton, individually and in her capacity as

Executrix of the Estate of Harold Wayne Chilton, moves the Court, submits the attached

Memorandum of Law in support of her Motion to limit the testimony of various experts

designed by the defendants in this case.[1]

**THE EXPERTS**

        The defendant Blue World Pools, Inc. has designated Carl Abraham as an expert in this

case to rebut Plaintiff's experts regarding the sufficiency of warnings in this case. In addition,

Abraham, an engineer by education and trade, also gives an opinion that Rebecca Chilton bears

responsibility in this case for negligent supervision.

_____

[1] Rebecca Chilton has made these exact arguments in her Motion for Summary Judgment filed contemporaneously
with this Motion in Limine. Without the testimony of these experts, there is no evidence upon which a jury could
find her to be liable in this case.

In his deposition, Abraham was asked if he believed Rebecca Chilton had any role in the accident, and he replied that she did. Abraham believed there were three areas on which he placed fault on Chilton:

a. There should have been parental supervision. (*Abraham dep., p. 141*). Abraham believes that by owning an above ground pool, the Chiltons are responsible for anything that might happen in the pool, 24 hours a day, regardless of reasonableness. In essence, Abraham conveys strict liability to the Chiltons for anything that might happen in a pool on their property. (*Id. p. 143, 144*). However, when asked on what did he base this opinion, Dr. Abraham was unable to give any answer other than, "it happens to be also the law. That's what happens in the court of law." (*Id. p. 145*). When pressed further on the bases of this opinion, Abraham finally stated the pool was an "attractive nuisance." (*Id. p. 146, line 11*). Abraham reiterated later that a home owner takes the risk of responsibility for any injury occurring in a pool because it is an attractive nuisance, and that is the only reason. (*Id. p. 150, lines 16-21*).

b. The Chiltons should have had a lockable cover on the pool. (*Id. p. 142, line 6*). Abraham testified this is available as an accessory that is manufactured by pool companies such as Wilbar. (*Id. p. 160, line 21*). When asked how Chilton was supposed to know about locking covers if not told about them by the seller, Abraham retreated a bit and said the cover does not need to be lockable, just something that would further signal children they should not swim. (*Id. p. 162, line 10-11*). However, Abraham admitted the cover could easily be removed by three adolescent boys. (*Id. p. 162*). Abraham then modified the cover requirement to say that a

homeowner does not have to put a cover on the pool when they leave, because they have a choice "to either be safe or gamble." (*Id. p. 163, line 1*).

Abraham was then asked if leaving home without putting a cover on a pool violated a standard of care owed to anybody. (*Id. p. 163, line 3-5*). His response was as follows:

> A. *There's no standard of care. I said it's an option. There is no standard of care in any – this industry to use a – cover at any time. But it's an option. You have, as a parent, some responsibilities. You're going to leave an open pool, an attractive nuisance for anybody to come in, or are we going to put a cover on – and at least restrain people from using the pool. They'd have to do something out of the ordinary.*

(*Id. p. 163-164, beginning at line 18 on p. 163*).

c. Abraham's final option was taking the water out of the pool every time the Chiltons left their home, which Abraham admitted was not practical. (*Id. p. 142, line 12*).

The defendant Wilbar has designated Jane Welch as its expert to rebut the Plaintiff's experts regarding the sufficiency of warnings in this case. Dr. Welch also testified as to her opinion that Rebecca Chilton bears some responsibility in this case as the result of her negligent supervision.

Welch's testimony was based on a report she prepared in this case that was attached as Exhibit 2 to her deposition. In her report she set out five (5) "Opinions" as follows:

1. *Wilbar's safety and instructional information on and with the subject pool were adequate and complied with good warning practice.*

2. *Patrick Tatum and the Chilton brothers were fully aware of the prohibition against diving into the pool and understood the possible consequences.*

3. *Different warnings by Wilbar would not have changed Patrick Tatum's behavior nor would they have prevented the subject accident.*

4. *Plaintiff's experts are incorrect in their assertion that Wilbar's warning system is inadequate.*

5. *Any alleged insufficient or inadequate warning by Wilber and/or Blue World Pools was not a proximate cause of this accident and Patrick Tatum's subsequent injuries.*

*Exhibit 2 to Welch deposition, p. 2.*

Welch admits that none of these opinions mention Rebecca Chilton in any way. (*Welch dep., p. 98, line 13*). She opines that Rebecca and Harold Chilton are "negligent" in this case due to negligent supervision of children, but on numerous occasions admits she has no expert basis for this opinion, or any legal or industry standard bases.

Dr. Welch testified, beginning *on page 100* of her deposition, *line 25*, and ending at *line 17 of page 101*, as follows:

**Q. So I ask you again: Do you have any expertise scientifically in what would be considered either a child that is in need of supervision or what level of supervision is required by the law?**

*A. Certainly legally I'm – you know, there are lawyers in this case, and I'm not one of them. I'm the warnings expert. So I'm just going to defer to others on the law.*

*Q. Well, I'm sorry, but I can't really let you do that. Are you saying, then, that with regard to what is legally required as far as supervising a child you have no expertise?*

*A. Well, I don't know what the laws are in regard to that.*

*Q. So you cannot offer an opinion in this case as to what the legal standard required of child supervision is?*

*A. That's correct.*

Later, Welch was asked about age limits in supervising children:

*Q. Okay. Are you aware of any industry standards within the swimming pool industry, either commercial or residential use, that sets a – an age limit for the supervision of children in a pool?*

*A. No. And I think the reason for that is undoubtedly what I've already said that children mature at different stages, and parents and operator – owners of pools are left to make the best determinations of who should and shouldn't be in the pool and when and when they shouldn't be in it and how to – to regulate that.*

*Q. Did you read the deposition of Maria Bella?*

*A. Yes.*

*Q. Do you recall a conversation she and I were having about this issue and her testifying that a child of the age of 14 is not required to be supervised under standards in commercial pools either with life guards or without?*

**A. Yes. I don't know about the with life guards or without. I don't remember that particular aspect of it, but I do remember that conversation.**

**Q. Do you challenge that statement from her?**

**A. No. No, I don't….**

(*Id. p. 115-116, beginning at line 18 on page 115*).

## ARGUMENT

## THE DESIGNATED EXPERTS ARE GIVING OPINIONS OUTSIDE THEIR EXPERTISE AND UNSUBSTANTIATED BY LAW, SCIENTIFIC PRINCIPLES OR INDUSTRY STANDARDS

As this Court is well aware, the standard set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.* (1993), 509 US 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 requires a Court to assess whether the reasoning or methodology underlying the testimony of an expert is scientifically valid. In evaluating the reliability of the scientific evidence, several factors are to be considered: 1) whether the theory or technique has been tested, 2) whether it has been subject to peer review, 3) whether there is a known or potential rate of error, and 4) whether the methodology has gained general acceptance. *Id.* at 593-594.

Although neither challenged expert is testifying as to a scientific opinion, it is evident from their testimony they are giving opinions as to Rebecca Chilton well outside their respective fields of expertise. Dr. Abraham is an engineer who was retained by Blue World pools to rebut Plaintiff expert testimony regarding the sufficiency of the warnings in this case. His testimony regarding his meager efforts to place some liability on Rebecca Chilton is rife with inaccuracies and mistakes. When he mentions "law" he usually states it incorrectly. He testified that Rebecca Chilton, as a home owner with a swimming pool, is strictly liable for any injuries suffered in the

pool.  As stated in the Memorandum in Support of Rebecca Chilton's Motion for Summary Judgment, he could not be more incorrect.

Abraham states the above ground swimming pool is an attractive nuisance.  As stated in the Memorandum in Support of Rebecca Chilton's Motion for Summary Judgment, he once again could not be more incorrect.

Dr. Welch is a communications of warning expert, with a Bachelor's Degree, a Master's Degree and a doctorate degree, all in English.  She has worked her entire life as someone working with corporations to develop safety warnings and standards, and yet she attempts to give opinions regarding the developmental rate of children, the level of supervision necessary for a 14 year old child, and is embarrassingly lacking in knowledge or expertise involving industry standards of supervision of children in pools.  (Welch dep., pp. 115-116).

A district court may properly exclude the testimony of an expert if that testimony lacks an adequate foundation or is not based on data "reasonably relied upon by experts in the particular field."  Brown v. Parker-Hannifin Corp., 919 SW 2d 308 (5th Cir. 1990).  In this case, that is exactly what this Court should do.

## CONCLUSION

It is obvious what has happened here.  The defendants had retained these experts before Rebecca Chilton was made a party in this case.  They were retained for their expertise in the real issue in this case, whether the warnings were sufficient to give notice of the danger of diving into an above ground pool containing four (4) feet of water, and whether P.T. was aware of the potentially dangerous condition.  It is only after Rebecca Chilton was added to this case, not in a direct action by the Plaintiff, but by the Defendants in an effort allow for the possibility of

lessened liability based on apportioned fault, that the experts attempted to bootstrap the opinions as to negligent supervision on expertise involving warnings and communications of warnings.

The two experts are more than qualified to give opinions as to their respective fields of expertise, but unfortunately, as to Rebecca Chilton, they are giving opinions well outside their respective fields of expertise and that portion of their testimony should be excluded by the Court.

Respectfully Submitted,

REINHARDT & ASSOCIATES, PLC

 /s/ Jeffrey A. Darling
R. CRAIG REINHARDT
JEFFREY A. DARLING
449 Lewis Hargett Circle, Suite 210
Lexington, KY 40503
(859)277-7100
(859)277-0070
Jdarling@reinhardtlaw.com
ATTORNEY FOR THIRD PARTY
DEFENDANT, REBECCA CHILTON

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on November 17, 2014, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system.  I further certify that I mailed the foregoing documents and the notice of electronic filing by first class mail, to the following non-CM/ECF participants:

Eric P. Von Wiegen, Esq.
4804 Sorrell Way
Lexington, KY 40514

David E. Rapoport, Esq.
David A. Neiman, Esq.
Michael Teich, Esq.
Rapoport Law Offices, PC
20 N. Clark, Suite 3500
Chicago, IL 60612

Jeffrey K. Phillips, Esq.
Steptoe & Johnson, PLLC
One Paragon Center
2525 Harrodsburg Road, Suite 300
Lexington, KY 40504

James M. Burd, Esq.
Lynsie Gaddis Rust, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker
100 Mallard Creek Road, Suite 250
Louisville, KY 40207

Francis Manchisi, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker
1133 Winchester Avenue
White Plains, NY 10604

 /s/ Jeffrey A. Darling
ATTORNEY FOR THIRD PARTY
DEFENDANT